UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PATRICE DORCIL,

              Petitioner,

      v.

WARDEN, ATTICA CORRECTIONAL
FACILITY,

           Respondent.

**MEMORANDUM & ORDER**
22-CV-4394 (HG)

**HECTOR GONZALEZ**, United States District Judge:

      Petitioner Patrice Dorcil, currently incarcerated in the custody of the New York

Department of Corrections and Community Supervision, petitions this Court *pro se* for a writ of

habeas corpus, pursuant to 28 U.S.C. § 2254.  ECF No. 1.  Following a jury trial in Kings County

Supreme Court (the "Trial Court"), Petitioner was convicted of two counts of Robbery in the

First-Degree and sentenced to fourteen years of imprisonment and five years of supervised

release on each count, to be served concurrently.  ECF No. 5-2 at 314 (Sentencing Transcript).

Petitioner's conviction was affirmed on appeal to the New York Supreme Court, Appellate

Division (the "Appellate Division").  *Id*. at 15.  Petitioner's request for leave to appeal to the

New York Court of Appeals was denied.  *Id*.

      Petitioner challenges the constitutionality of his trial, arguing that the Trial Court

infringed on his constitutional right to due process by:  (i) improperly admitting unduly

suggestive evidence; and (ii) improperly withholding DNA evidence from the jury.  ECF No. 1

at 2.  For the reasons set forth below, the petition is denied.

## BACKGROUND[1]

On October 31, 2015, police responded to a report of an armed robbery at a T-Mobile store located at 1566 Flatbush Avenue in Brooklyn.  ECF No. 5 at 1, 3 (Respondent's Opposition).  Two store employees told a responding detective that two men robbed them at gunpoint.  *Id.* at 3.  One witness told the detective that a man had entered the store inquiring about the price of an iPhone when another man entered brandishing a firearm.  *Id*.  Both men then forced the employees into the back of the store, where Petitioner allegedly duct-taped their hands behind their backs.  *Id.* at 1.  The men left the store with approximately sixty new cell phones and the witnesses' personal cell phones.  *Id*. at 2.  Later that evening, police arrested Roberd Desronvil in connection with the robbery.  Desronvil identified Petitioner as his accomplice and as the person responsible for organizing the crime.  *Id.*

A used roll of duct tape and pieces of duct tape separated from that roll were collected from the T-Mobile store and subsequently taken to a police laboratory, where they were swabbed for DNA evidence.  *Id*. at 12.  The lab later determined that the duct tape contained Petitioner's DNA.  *Id.*

The morning after the robbery, a detective prepared two different photographic arrays containing Petitioner's photograph.  *Id.* at 3–4.  Each witness was shown one of the two unique arrays, and both independently identified Petitioner as the man who robbed the T-Mobile store.  *Id.* at 5–6; ECF No. 5-1 at 119–130 (Photo Arrays).  Both witnesses were then shown a single photo of Petitioner and confirmed their identifications.  *Id.*  Approximately six months later, on the evening of April 29, 2016, Petitioner surrendered at the 70th Precinct.  ECF No. 5 at 6.  One

---

[1]      The factual background is gleaned from Respondent's Affidavit in Opposition to Petition for Writ of Habeas Corpus, which in turn attaches the state court record as exhibits.  ECF No. 5 at 1–17.

of the two store employees identified Petitioner during a lineup at the precinct.  *Id.* at 6–7; ECF No. 5-1 at 131–144 (Photos of Lineup).

Prior to trial, Petitioner moved to suppress the pretrial identifications, arguing that features of the photo array and lineup procedures made them "unduly suggestive."  ECF No. 5 at 2, 8–9; ECF No. 5-1 at 99 (Suppression Hearing Transcript).  The Trial Court denied the motion, holding that neither procedure had been unduly suggestive.  ECF No. 5 at 9; ECF No. 5-1 at 100–106 (Suppression Hearing Transcript); *see also* ECF No. 5-1 at 146–154 (Decision and Order Denying Defendant's Motion to Suppress).

The jury trial began on April 11, 2018.  ECF No. 5-2 at 2 (Trial Transcript).  The prosecution introduced video surveillance footage of the robbery, and several witnesses testified, including both store employees, and the detective who worked on the case.  *Id.* at 32, 45, 75, 111.  Petitioner did not testify.  *See generally* ECF No. 5-2 at 1–308 (Trial Transcript).

During deliberations, the jury asked to see DNA results from the duct tape collected at the crime scene.  ECF No. 5 at 13–14; ECF No. 5-2 at 300–301 (Trial Transcript).  In order to clarify which specific exhibits were sought, the jury was brought into the courtroom and told by the Trial Court that its request needed "a little more specificity in order [for the Trial Court] to respond more appropriately."  ECF No. 5 at 14; ECF No. 5-2 at 303 (Trial Transcript).  The defense did not object to the Trial Court's request for clarification.  *Id*.  Ultimately, the jury withdrew its request to see the DNA results before the Trial Court had a chance to resolve it. ECF No. 5 at 14; ECF No. 5-2 at 304 (Trial Transcript) ("We have a new note. . . .  It says disregard DNA request, so there is no more issue.").

On April 18, 2018, the jury returned a verdict of guilty on two counts of Robbery in the First-Degree.  ECF No. 5 at 14; ECF No. 5-2 at 305–307 (Trial Transcript).  On May 22, 2018,

Petitioner was sentenced to a prison term of 14 years followed by a five-year term of post-release supervision on each count, to be served concurrently.  ECF No. 5 at 14; ECF No. 5-2 at 314 (Sentencing Transcript).

Petitioner appealed his conviction, contending that:  (i) the photo arrays were unduly suggestive because "while the filler[] [photos] were all full-face shots, [Petitioner's] was taken from a distance;" (ii) the single photos shown to the witnesses after the photo array identification procedures were unduly suggestive; and (iii) the lineup was unduly suggestive because, at the time of the lineup, Petitioner was twenty-three years old and the fillers ranged in age from thirty-five to fifty-one years old.  ECF No. 5 at 14;  ECF No. 5-3 at 1–46 (Appellate Brief).  On May 26, 2021, the Appellate Division affirmed the conviction, holding that:  (i) the lineup was not unduly suggestive because the age disparities between Petitioner and the fillers were not so apparent as to orient the viewer towards Petitioner; and (ii) Petitioner's remaining contentions were without merit.  *People v. Dorcil*, 194 N.Y.S.3d 1069 (N.Y. App. Div. 2d Dep't 2021).  Thereafter, Petitioner sought leave to appeal to the New York Court of Appeals.  His application was denied on September 27, 2021.  *See People v. Dorcil*, 37 N.Y.3d 1026 (N.Y. 2021).

On July 27, 2022, Petitioner timely filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1.  Respondent submitted an opposition on October 12, 2022, ECF No. 5, and on October 24, 2022, Petitioner filed his reply.  ECF No. 6.

## **LEGAL STANDARD**

### I.    **Deferential Standard of Review**

Federal courts apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), to determine

whether a petitioner in state custody is entitled to a writ of habeas corpus.  It provides in relevant

part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law only if "the state

court reached a conclusion of law that directly contradicts a holding of the Supreme Court" or,

"when presented with facts that are materially indistinguishable from a relevant Supreme Court

precedent," the state court arrived at a different result.  *Evans v. Fischer*, 712 F.3d 125, 132 (2d

Cir. 2013).[2]  The writ may also be granted if a state court decision is an "unreasonable

application" of clearly established federal law, meaning that "the state court identifies the correct

governing legal principle from [Supreme Court] decisions but unreasonably applies that principle

to the facts of the prisoner's case."  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  Reviewing

courts are especially deferential to a state court's application of general rules.  *See Yarborough v.*

*Alvarado*, 541 U.S. 652, 664 (2004) ("The more general the rule, the more leeway [state] courts

have in reaching outcomes in case-by-case determinations.").

---

[2]     Unless noted, case law quotations in this order accept all alterations and omit all internal quotation marks, citations, and footnotes.

Apart from a state court's adjudication of a claim that was an unreasonable application of or contrary to clearly established federal law, a district court may grant a writ of habeas corpus when the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  Federal courts presume that a state court's determination of the facts is correct, however, and the petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).

## II.     Exhaustion Requirement and Procedural Default

A district court shall only review a writ of habeas corpus if "the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  The Second Circuit has adopted a "two-stage inquiry for determining whether the requisite exhaustion has occurred."  *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981).

First, the petitioner must have fairly presented his "federal constitutional claim to an appropriate state court."  *Id*.  "A federal habeas petitioner may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution by stating his constitutional claim clearly enough so that a court can easily discern its basis." *Christopher v. Connolly*, No. 06-cv-1575, 2013 WL 1290810, at *7 (E.D.N.Y. Mar. 28, 2013). However, a petitioner's state court claim must have raised "[the same] factual and . . . legal premises" as the federally asserted claim and must have been presented in a way that was "likely to alert the [state] court to the claim's federal nature."  *Daye v. Att'y Gen. of State of New York*, 696 F.2d 186, 191–92 (2d Cir. 1986).

6

Second, after "having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure appellate review of the denial of that claim." *Klein,* 667 F.2d at 282. "Although a petitioner need not petition the United States Supreme Court by writ of certiorari, the state prisoner must fairly present his federal constitutional claims to the highest state court having jurisdiction over them." *O'Neal v. New York*, 465 F. Supp. 3d 206, 214–15 (E.D.N.Y. 2020). "Specifically, petitioner must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." *Id.* at 215; *see also Daye*, 696 F.2d at 192 ("The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court."). If petitioner has done so, and relief is denied, petitioner has "thereupon unsuccessfully employ[ed] all the state appellate procedures available for review of such denial" and "satisf[ies] the exhaustion requirement." *Klein*, 667 F.2d at 282.

Finally, a federal court may not review federal claims that "the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, 582 U.S. 521, 527 (2017). Those claims are considered "procedurally defaulted in state court." *Id*. "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address the merits of those claims in the first instance." *Id.* at 527–28.

### III.   *Pro Se* Petitioner Consideration

Petitioner is proceeding *pro se.*  As such, his pleadings are held to "less stringent standards than formal pleadings drafted by lawyers."  *O'Neal*, 465 F. Supp. 3d at 216; *see also, e.g.*, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, courts "remain obligated to construe a *pro se* complaint liberally").  "Nonetheless, a *pro se* litigant is not exempt from compliance with relevant rules of procedural and substantive law." *Gutierrez v. Capra*, No. 14-cv-6887, 2019 WL 1508454, at *7 (E.D.N.Y. Apr. 5, 2019).

## DISCUSSION

Here, Petitioner alleges that:  (i) the pretrial identification evidence supporting his conviction was unduly suggestive; (ii) the witnesses' identifications were not independently reliable; and (iii) the Trial Court erred in failing to provide DNA evidence requested by the jury. ECF No. 1 at 2–9.  Respondent counters that the Trial Court properly denied Petitioner's motion to suppress the pretrial identifications and that any error in that regard was harmless in light of alternative evidence supporting Petitioner's guilt.  ECF No. 5 at 25–43.  Respondent further contends that Petitioner's claim regarding the DNA evidence is unexhausted, procedurally barred, and in any event, without merit.  *Id.* at 44–48.  For the reasons stated below, the Court finds these claims to be unexhausted, procedurally barred, and without merit.

### I.   Petitioner's Suggestiveness Claims are Unexhausted, Procedurally Barred and Without Merit

Petitioner claims that the pretrial identification procedures employed by the police were unduly suggestive.  ECF No. 1 at 2–7, 9.  The Supreme Court has held that a criminal defendant has a Fourteenth Amendment right to be free from pretrial identification procedures that are "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384 (1968).  Determination of

whether an identification procedure violates due process turns on the particular facts of that case. *Brisco v. Ercole,* 565 F.3d 80, 88 (2d Cir. 2009).

According to Petitioner, the photo arrays were unduly suggestive because his photograph was taken at a further distance than the other individuals depicted, creating a "substantial likelihood" that he would be singled out. ECF No. 1 at 6; *Simmons*, 390 U.S. at 384. Petitioner further alleges that the lineup was flawed because of the age discrepancy between him and the fillers, as well as by the fact that the witness had already seen his mugshot during the photo array identification. ECF No. 6 at 1. Finally, Petitioner argues that the traumatic circumstances of the robbery compromised the reliability of the lineup identification. *Id.* ("[The witnesses] feared for their lives. Any human being would, which means they wouldn't be able to have a photographic memories [sic] of the robbers, after six months."). Respondent disagrees, contending that: (i) the photo arrays shown to the witnesses were not unduly suggestive; (ii) the lineup was not unduly suggestive; and that, in any event, (iii) any erroneous admission of the identifications was harmless because the other evidence of Petitioner's guilt was overwhelming. ECF No. 5 at 25–43. For the reasons described below, the Court finds that neither the lineup identification nor the photo arrays were unduly suggestive. The Court further finds that Petitioner's remaining claims are unexhausted, procedurally barred, and without merit.

### A. The Photo Arrays Were Not Unduly Suggestive

"A photo array is unduly suggestive if some feature or characteristic of one of the depicted individuals or photographs is so unique or distinctive that it draws the viewer's attention to that photograph." *United States v. Wong*, 40 F.3d 1347, 1359–60 (2d Cir. 1994). Individuals depicted in pretrial photo arrays need only have sufficiently similar characteristics to the defendant as not to create a substantial likelihood that the defendant would be singled out. *See,*

*e.g.*, *Fabers v. Lamanna,* No. 18-cv-2399, 2020 WL 1875288, at *19–20 (E.D.N.Y. Apr. 15, 2020).  The photo of Petitioner used in the pretrial identification arrays was taken from a slightly further distance than the other individuals depicted, "resulting in approximately an extra inch of the [Petitioner]'s shoulder being visible in the photo."  ECF No. 5 at 4.

The Appellate Division's factual finding that the photo arrays were not rendered unduly suggestive by the extra distance was neither contrary to, nor an unreasonable application of established federal law.  *Dorcil*, 144 N.Y.S.3d 394 at 1070; *see also Evans*, 712 F.3d at 132 (holding that a state court decision is "contrary to" clearly established federal law only if "the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court").  After reviewing the photo arrays, the Court finds that the "extra inch of the defendant's shoulder being visible in the photo," ECF No. 5 at 4, is not "so unique or distinctive that it draws the viewer's attention to that photograph."  *Wong*, 40 F.3d at 1359–60.  The record indicates that in all other respects, the individuals depicted in the photo arrays had characteristics "sufficiently similar in appearance [to those of Petitioner]."  *Fabers*, 2020 WL 1875288, at *7 (finding that "the record supports the reasonableness of the state court's conclusion that the lineup was not unduly suggestive").

Petitioner does not address the Appellate Division's finding against Petitioner on this claim.  In light of the highly deferential AEDPA standard, under which applicants for a writ of habeas corpus bear the burden of rebutting state court determinations of factual issues by "clear and convincing evidence," this Court must accord a presumption of correctness to the Appellate Division's finding that the photo array identification evidence was properly admitted.  28 U.S.C. § 2254(e)(1); *see Jones v. Fischer,* No. 05-cv-7774, 2009 WL 884814, at *11 (S.D.N.Y. Mar. 30, 2009) (holding that a state court's finding that petitioner's photo in a pretrial photo array is not

unduly suggestive is a finding of fact entitled to deference as a purely factual determination).

Accordingly, the Court finds Petitioner's claim that the photo arrays were unduly suggestive to

be without merit.

### B.   The Lineup Was Not Unduly Suggestive

Petitioner further alleges that his pretrial identification lineup was unduly suggestive

because the other men who appeared in the lineup were between the ages of thirty-five and fifty-

one, while Petitioner was only twenty-three.  ECF No. 1 at 5.  "A lineup is unduly suggestive as

to a given defendant if he meets the description of the perpetrator previously given by the

witness and the other lineup participants obviously do not."  *Raheem v. Kelly,* 257 F.3d 122, 134

(2d Cir. 2001); *see also West v. Greiner*, No. 01-cv-1267, 2004 WL 315247, at *16–17

(E.D.N.Y. Feb. 12, 2004) (holding that lineup identification procedure was not unfairly

suggestive where petitioner was only person in the lineup with grey hair and witnesses'

descriptions of perpetrator did not include grey hair).  Individuals appearing in a lineup need not

look identical so long as a "reasonable effort to harmonize the lineup" was made.  *Piper v.

Portuondo*, 82 F. App'x 51, 52 (2d Cir. 2003) ("Due process [in a pretrial identification

procedure] does not, however, require total uniformity of appearance."); *Alonge v. Chappius*, No.

12-cv-542, 2019 WL 1642449, at *20 (E.D.N.Y. Apr. 16, 2019) ("Because it would be unduly

burdensome to require police officials to find five or six very similar individuals for a lineup, a

reasonable effort to harmonize the lineup is normally all that is required.").  The Supreme Court

has found lineups unduly suggestive only in "extreme circumstances."  *Perkins v. Com'r of Corr.

Servs*., 218 F. App'x 24, 25 (2d Cir. 2007).

Petitioner argues that, due to the age discrepancy between him and the fillers, he was the

only member of the lineup who could have fit the witnesses' description of "between eighteen

and twenty-five years old." ECF No. 5 at 3. The Appellate Division rejected this argument, finding that the age discrepancy had not rendered the lineup identification unduly suggestive. *Dorcil*, 144 N.Y.S.3d at 1070 ("The photographs taken of the lineup reflect that the age disparities between the defendant and the fillers were not so apparent as to orient the viewer toward the defendant as a perpetrator of the crimes charged."). In reviewing the Appellate Division's finding, this Court once again applies the highly deferential AEDPA standard under which the Petitioner bears the burden to rebut the finding by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Petitioner has failed to meet that burden.

The Appellate Division's finding that Petitioner's lineup was not unduly suggestive is neither contrary to, nor an unreasonable application of established federal law. *Evans*, 712 F.3d at 132; *Williams*, 529 U.S. at 413. Though age often correlates with an individual's physical appearance, there is no requirement that individuals depicted in identification procedures be close in age. *See Roldan v. Artuz*, 78 F. Supp. 2d 260, 274 (S.D.N.Y. 2000) ("Even if all of the lineup fillers were older, however, this is not enough to constitute an unduly suggestive lineup."); *see also Keita v. Fields*, No. 20-cv-06154, 2020 WL 6647288, at *2 (S.D.N.Y. Nov. 12, 2020) (denying on the merits petitioner's claim that age differences between him and the fillers resulted in an unduly suggestive lineup). Here, the record indicates that the precinct made "reasonable effort[s] to harmonize the lineup," taking deliberate steps to limit obvious physical discrepancies between the fillers—for example, Defendant and all fillers were viewed seated, with their legs covered by a blanket, and with numbered cards in front of their chest so as to minimize any deviations in weight, height, and body type. ECF No. 5 at 6, 36–37; *see also* ECF No. 5-1 at 137 (Photo of Lineup). Each filler (including Petitioner) was also wearing an identical red bandana tied around his head. ECF No. 5-1 at 137 (Photo of Lineup). Petitioner, who

12

merely restates his earlier age discrepancy claim in his habeas petition, fails to meet his burden

to rebut the Appellative Division's finding by "clear and convincing evidence." 28 U.S.C. §

2254(e)(1). Thus, the Court finds that Petitioner's claim that the lineup identification evidence

was unduly suggestive is without merit.

C. *Petitioner's Remaining Claims Pertaining to the Identification Procedures Are*
   *Unexhausted, Procedurally Barred, and Lack Merit*

In his response, Petitioner additionally alleges that: (i) the lineup identification procedure

was rendered unduly suggestive because the witness saw his "old mugshot picture" at the photo-

array identification six months before the lineup, ECF No. 6 at 1, and that (ii) the reliability of

the witness's subsequent lineup identification was compromised by the traumatic circumstances

of the robbery. *Id.* Petitioner did not raise either of these claims before the Trial Court.

"[P]etitioner must have set forth in state court all of the essential factual allegations asserted in

his federal petition; if material factual allegations were omitted, the state court has not had a fair

opportunity to rule on the claim." *O'Neal*, 465 F. Supp. 3d at 215; *see also Daye*, 696 F.2d at

192 (finding that petitioner must set forth in state court all of the essential factual allegations

asserted in his federal petition). Therefore, Petitioner's new claims regarding the pretrial

identification evidence are unexhausted.

A habeas petition that contains exhausted and unexhausted claims is generally dismissed

to allow the petitioner to return to state court to raise the unexhausted claims, if possible, under

state law. *Rose v. Lundy*, 455 U.S. 509, 518–21 (1982). ("[I]t would be unseemly in our dual

system of government for a federal district court to upset a state court conviction without an

opportunity to the state courts to correct a constitutional violation. . . ."). However, a federal

court reviewing a habeas petition need not require that unexhausted claims be presented to a state

court if it is clear that the state court would hold the claim procedurally barred. *See Harris v.*

*Reed*, 489 U.S. 255, 263 n.9 (1989); *see also Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997).

Under New York law, defendants are only permitted one direct appeal, and "record-based"

claims (as opposed to claims hinging on facts outside the trial record) must be raised in that

direct appeal. *See Gabbidon v. Lee*, No. 18-cv-2248, 2022 WL 1557272, at *12–13 (S.D.N.Y.

Mar. 10, 2022), *report and recommendation adopted*, 2022 WL 1558156 (S.D.N.Y. May 16,

2022); *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) (holding that New York procedural rules

"plainly bar" petitioner from raising claims because he did not raise them when he "made the one

request for leave to appeal to which he is entitled"); N.Y. Crim. Proc. Law § 440.10(2)(c)

(barring review if claim could have been raised on direct review).  Petitioner's new claims

regarding his "mugshot" and the independent reliability of the witness identifications were

neither raised before the Trial Court nor on direct appeal.  Thus, Petitioner's claims are not only

unexhausted, but procedurally barred.

Nevertheless, because Petitioner is proceeding *pro se* and his pleadings are held to "less

stringent standards than formal pleadings drafted by lawyers," *O'Neal*, 465 F. Supp. 3d at 216,

the Court will address the merits of his claims.  Petitioner alleges that the lineup identification

was rendered unduly suggestive because the identifying witness was shown his "mugshot" at the

photo array identification six months earlier.  ECF No. 6 at 1.  This argument fails because even

if any "taint" resulted from seeing the mugshot, it was attenuated from the subsequent lineup

identification by the significant passage of time.  *See Dixson v. Lamanna,* No. 18-cv-8285, 2022

WL 19180, at *43–44  (S.D.N.Y. Jan. 3, 2022) (affirming Appellate Division's determination

that any taint from prior identification procedures had been attenuated by passage of "more than

two months" before petitioner was identified at a lineup); *see also Simmonds v. Kuhlman*, No.

97-cv-7539, 2000 WL 1833722, at *5 (E.D.N.Y. Dec. 7, 2000) ("In any event, a twenty month

interval passed between the photographic procedure and the lineup identification procedure so

that any possible taint would likely have been attenuated to such a degree as not to have affected

the admissibility of the lineup identification."). Here, the six months between the photo array

identification and the subsequent lineup identification cures any alleged defect.

Furthermore, the lineup identification evidence would have been properly admitted even

if no time had passed because the lineup identification was independently reliable. *Raheem,* 257

F.3d at 133 ("[I]dentification evidence will be admissible if (a) the procedures were not

suggestive or (b) the identification has independent reliability."); *see also Neil v. Biggers*, 409

U.S. 188, 199 (1972) (enumerating factors to consider in determining the independent reliability

of identification testimony, including, among other things, opportunity of the witness to view the

suspect at the time of the crime and the witness' degree of attention). The record indicates that

the witness had a clear, prolonged opportunity to view the robber at the time of the crime. Prior

to the initiation of the robbery, which occurred in a well-lit store, the robber had a face-to-face

conversation with the witness. ECF No. 5 at 10. During the commission of the robbery, the

witness had multiple close-range interactions with the robbers, who ordered the employees to the

rear of the store and bound them with duct tape. *Id.* These events occurred at gunpoint,

demanding great attention from the witness. *Id.* The record is also devoid of any evidence

indicating either hesitation by the witness when making the identification or prompting by the

police. *Id.* at 5–6. The six-month gap between the crime and the lineup identification does not

significantly diminish the independent reliability of the identification when considered in light of

the other factors just detailed. *Biggers,* 409 U.S. at 201 (holding that a "[significant time lapse]

would not be dispositive when weighed against other factors of reliability"); *see also United

States v. Jacobowitz*, 877 F.2d 162, 168 (2d Cir. 1989) (holding that a ten-month gap between

the crime and identification, though "a longer delay than is desirable," did not make the identification unreliable).

Considering all these factors, the Court finds that the lineup identification was independently reliable and thus was properly admitted even if it had been "tainted" by the mugshot, as Petitioner alleges.[3]

## II.   Petitioner's Claim That the Witnesses' Identifications Were Not Independently Reliable Is Unexhausted, Procedurally Barred, and Lacks Merit

Petitioner points to a discrepancy in the witnesses' prior descriptions of the suspect to argue that the pretrial identifications were not independently reliable.  ECF No. 1 at 9.  This claim is unexhausted, procedurally barred, and without merit.

At the crime scene, one witness described the suspect as wearing a black hoodie and red shoes.  ECF No. 5 at 3.  Two days later, the other witness described the suspect as "the one wearing the all black sweater . . . and the white [shoes]."  *Id.* at 6.

Petitioner did not raise this claim before the Trial Court or on direct appeal, thus it is unexhausted and procedurally barred.  *See Gabbidon*, 2022 WL 1557272, at *12-13 (holding that New York law only permits defendants one direct appeal and mandates that "record-based" claims be raised in that direct appeal); *Reed*, 489 U.S. 255, at 263 n.9 (holding that federal courts need not require that unexhausted claims be presented to a state court if it is clear that the state court would hold the claim procedurally barred); *see also* N.Y. Crim. Proc. Law § 440.10(2)(c) (barring collateral review if claim could have been raised on direct review).

---

[3]     The Court additionally finds Petitioner's argument that the reliability of the various identifications was compromised by the trauma of the underlying crime to be unpersuasive. Nothing in the record suggests that the witnesses were left in a mentally compromised state by the robbery.  Applied broadly, Petitioner's theory would effectively eliminate the use of identification procedures for any violent or otherwise traumatic crime.

In any event, the Court finds that even if Petitioner had properly raised this claim, it fails as a matter of law.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  A court need only consider the independent reliability of witness identification following a determination that pretrial identification procedures were unduly suggestive.  *Raheem*, 257 F.3d at 133 ("[I]dentification evidence will be admissible if (a) the procedures were not suggestive or (b) the identification has independent reliability.").  For the reasons discussed previously, the Court finds that the pretrial identification procedures challenged here were not unduly suggestive.

Moreover, even if the claim had been properly raised and the pretrial identification was found to be unduly suggestive, the witnesses' identifications would still have been admissible because they were independently reliable under the "totality of the circumstances."  *Manson*, 432 U.S. at 114 (holding that "reliability is the linchpin in determining the admissibility of identification testimony," and that the determination of "reliability" depends on "the totality of the circumstances"); *Biggers*, 409 U.S. at 199 (setting out the factors to be considered in determining the independent reliability of identification testimony).  The accuracy of witness descriptions is only one of several factors to be weighed in determining the independent reliability of witness identifications.  *Raheem*, 257 F.3d at 133 (holding that no single factor articulated in *Biggers* is dispositive in evaluating whether witness identification is independently reliable).  Other, more persuasive, factors support a finding of independent reliability in this instance, particularly the witnesses' prolonged opportunity to view the robbers' faces during the commission of the crime.  ECF No. 5 at 10.  Accordingly, the Court finds that Petitioner's claim

that the witnesses' identifications were not independently reliable lacks merit, in addition to being unexhausted and procedurally barred.

### III.    Petitioner's Claim That the Trial Court Erred in Failing to Provide DNA Evidence Requested by the Jury is Unexhausted, Procedurally Barred and Not Cognizable as a Basis for Habeas Relief

Petitioner argues that the Trial Court erred in failing to provide DNA evidence when initially requested by the jury.  ECF No. 1 at 8.  The Court finds that this claim is unexhausted, procedurally barred, and not cognizable as a basis for habeas relief.

First, because Petitioner did not raise his jury note claim on direct appeal nor, for that matter, in any state court proceeding the claim is unexhausted and procedurally barred.  *Rose*, 455 U.S. at 516, 518–21; *see also Reed*, 489 U.S. 255 at 263 n.9.  However, even if Petitioner had raised this claim on direct appeal, the claim would not be cognizable on federal habeas review.  Federal habeas relief is available to state prisoners only to correct violations of:  (i) the United States Constitution; (ii) federal laws; or (iii) treaties of the United States.  *See* 28 U.S.C. § 2254(a).  "A federal court may not issue a writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *see also Adams v. Greiner*, No. 02-cv-6328, 2004 WL 912085 at *2 (S.D.N.Y. Apr. 29, 2004) ("Habeas corpus is not an extension of the appeals process in the state court.  Rather, it is a remedy for violations of a defendant's rights under the federal Constitution, and a very narrow remedy at that.").  The violation alleged by Petitioner falls under New York's Criminal Procedure Law ("CPL") § 310.30, which establishes the procedure by which a trial court must respond to jury notes.  Violations of section 310.30 are "not cognizable on federal habeas corpus review."  *Cornado v. Bellnier*, No. 10-cv-5265, 2012 WL 6644637, at *6 (S.D.N.Y. Sept. 20, 2012) ("Petitioner alleges nothing more than a possible violation of [CPL §] 310.30, citing to no federal authority.  Thus he has not raised a claim that is

cognizable on federal habeas corpus review."), *report and recommendation adopted*, 2012 WL 6681692 (S.D.N.Y. Dec. 21, 2012); *Council v. Connell*, No. 08-cv-11357, 2010 WL 1140879, at *7 (S.D.N.Y. Mar. 25, 2010), *report and recommendation adopted*, 2010 WL 2884746 (S.D.N.Y. July 20, 2010) (holding that violations of CPL § 310.30 do not implicate the Constitution, laws or treaties of the United States); *Johnson v. Graham*, No. 09-cv-5838, 2010 WL 3855286, at *5 (S.D.N.Y. Oct. 1, 2010) ("[P]etitioner's jury note claim does not implicate a federally protected constitutional right. . . .  The trial court's alleged omission presents a question of state law that is not cognizable on federal habeas review.").  Accordingly, the Court cannot review the merits of this claim.

## **CONCLUSION**

For the foregoing reasons, the Court DENIES the petition pursuant to 28 U.S.C. § 2254 with prejudice.

The Court finds that Petitioner failed to make a substantial showing of the denial of a constitutional right.  Therefore, a certificate of appealability ("COA") shall not issue.  *See* 28 U.S.C. § 2253(c)(2).  Any additional request for a COA must be addressed to the Court of Appeals.  *See* Fed. R. App. P. 22(b).  The Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_/s/ Hector Gonzalez_
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
      October 13, 2023